**Affirmed as Modified and Opinion filed February 27, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00582-CV

---

## FLEMING & ASSOCIATES, L.L.P N/K/A FLEMING, NOLEN & JEZ, L.L.P., Appellant/Cross-Appellee

### V.

## DANIEL P. BARTON, THE BARTON LAW FIRM, AND THE JOHNSON-BARTON JOINT VENTURE, Appellees/Cross-Appellants

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2009-50241**

---

### O P I N I O N

In this dispute over a referral fee agreement, Fleming & Associates, L.L.P. challenges the final judgment in favor of appellees/cross-appellants in three issues. First, Fleming & Associates challenges the pre-trial partial summary judgment on liability. Second, Fleming & Associates asserts that the trial court erred in refusing to reduce any damages awarded to appellees/cross-appellants by 45% pursuant to a Profit Interest Transfer Agreement entered into between Fleming & Associates and

former partner of the Johnson-Barton Joint Venture, Nick Johnson. Finally, Fleming & Associates claims that the trial court erred by awarding statutory attorney's fees against it under section 38.001 of the Texas Civil Practice and Remedies Code because it is neither a corporation nor an individual. Appellees/cross-appellants Daniel P. Barton, the Barton Law Firm, and the Johnson-Barton Joint Venture (collectively, the Barton Group) assert in their cross appeal that the trial court erred (1) by granting a pre-trial partial summary judgment finding that George M. Fleming was not liable in his personal capacity and (2) by computing prejudgment interest from March 8, 2008, instead of April 29, 2007.

We agree with Fleming & Associates that the trial court erred by awarding statutory attorney's fees against it under section 38.001 because a limited liability partnership is neither an individual nor a corporation. We therefore modify the trial court's judgment to remove all portions awarding attorney's fees to the Barton Group. Rejecting all other challenges, we affirm the judgment as modified.

## I. BACKGROUND

*The underlying dispute*

This dispute arose between lawyers involved in the Fen-Phen pharmaceutical litigation over what expenses could be charged to a referring lawyer under the parties' letter agreement. Lawyers Nick Johnson and Dan Barton formed the Johnson-Barton Joint Venture (J&B). J&B obtained powers of attorney for Fen-Phen cases in the second round of that litigation. J&B entered into a

2

February 6, 2002 letter agreement to refer cases to another law firm, Fleming & Associates (F&A).[1]

The February 6 letter agreement (the Contract) outlined the fee structure between the parties in two material parts: (1) 224 existing FDA positive cases already in J&B's offices to be forwarded to F&A; and (2) future Fen-Phen business to be referred by J&B to F&A. The pertinent provisions regarding handling of expenses at issue in this case are substantively identical in both parts of the Contract. The provision excerpted from the first part provides as follows:

> (c) The attorneys' fees on the 224 FDA positive cases described in paragraph 1(a) will be divided 50% to F&A and 50% to [J&B], jointly. F&A will be responsible for all future litigation costs, the discovery, preparation for trial and/or appeal of the cases forwarded to F&A by J&B. These litigation expenses will be deducted from the client's recovery at the time of settlement or recovery.

> (d) F&A will have the right to retain local counsel to assist in any future litigation concerning the cases forwarded to [F&A] by J&B. The attorney fees payable to local or outside counsel, under an agreement with F&A or J&B will be paid out of the settlement or recovery before fees are divided under paragraph 1(c) of this agreement.

The second part of the Contract, entitled "Future Fen-Phen Business," begins with the following statement: "It is the intention of both parties to this agreement to associate in obtaining Fen-Phen cases, in addition to the 224 cases referred to in paragraph 1(a) above. F&A and J&B hereby enter into a joint venture to sign up additional FDA positive cases according to the following terms[.]" This part differs in that the first sentence of subsection 2(c) states, "The attorneys' fees on the new FDA positive cases described in paragraph 2(a) will be

---

[1] F&A changed its name before judgment was rendered in this case to Fleming, Nolen & Jez, L.L.P., but we refer to it as F&A throughout this opinion.

divided 50% to F&A and 50% to J&B, jointly." Additionally, the final sentence of subsection (d) refers to the division of fees under paragraph 2(c) of the Contract, rather than paragraph 1(c). J&B sent F&A approximately 1,500 additional cases under the terms of part two of the Contract. F&A entered into agreements with other referring law firms and prosecuted roughly 8,000 Fen-Phen cases. F&A favorably resolved most of the cases referred to it by October 2006.

On October 16, 2006, F&A paid J&B for most of the cases J&B had referred to it, sending a letter and a "distribution statement" for J&B's "portion" of fees (the October 16 Letter). In this letter, F&A stated, "In reviewing the distribution statement, you may notice that in accordance with our venture, there are deductions for certain client non-reimbursable expenses. These expenses were not overhead, but were specifically incurred to keep our Fen-Phen clients in court and to allow their recovery." On the attached "Attorney Distribution Statement," F&A showed the sums it deducted from J&B's total referring attorney's fees of $11,026,890.04. Specifically, F&A deducted $2,697,581.92 for "Your Firm Percentage Share" of the following:

| | |
|---|---|
| Common Expenses | $1,615,966.69 |
| Professional Services | $736,444.72 |
| Advertising Expenses | $345,108.01 |
| Communications/Call Centers | $62.50 |

F&A paid J&B a "net referring attorney's fee" of $8,329,308.12. J&B disputed these deductions, and numerous emails were exchanged between George Fleming, Dan Barton, and Nick Johnson. F&A subsequently agreed that the advertising expenses should not have been deducted and reimbursed J&B $345,108.01. Based on the October 16 distribution, total disputed deductions of $2,352.473.91

4

remained. J&B informed F&A that these deductions were improper. In 2007, a second dispute arose regarding whether certain expense reimbursements and additional attorney's fees earned and collected on forwarded cases settled after the October 16, 2006 distribution was made were owed to J&B. J&B's efforts to resolve this dispute also failed.

On November 4, 2008, without Barton's knowledge, Fleming, individually and on behalf of F&A; Johnson, individually and on behalf of his own law firm and J&B to the extent of Johnson's "45% interest therein"; and Bob Chaffin—an individual not involved in this appeal, entered into a Profits Interest Transfer Agreement (PITA). Under the PITA, Johnson sold to Fleming and F&A "the entirety of Johnson's right, title and interest in and to any profits, income, revenues, distributions or compensation associated with or flowing from Johnson's 45% interest in The Johnson Barton Joint Venture" for $500,000. However, the PITA explicitly stated that "[n]othing in this agreement . . . shall be construed to constitute a conveyance to Fleming [and F&A] of Johnson's equity interest in J&B or to make Fleming [and F&A] a partner or venturer in J&B." In May 2008, about six months after signing the PITA, Johnson withdrew from J&B. In his written notification that he was withdrawing from J&B, Johnson stated he was relinquishing "any legal, beneficial, or other rights, title, or interests in any way related to J&B and/or the ownership of J&B."

*The lawsuit*

On August 7, 2009, Daniel P. Barton, the Barton Law Firm, and J&B (collectively, the Barton Group) filed suit against Fleming and F&A, alleging breach of the Contract and promissory estoppel. The Barton Group further sought attorney's fees pursuant to section 38.001 of the Texas Civil Practice and

Remedies Code.[2]  F&A answered with a denial and affirmative defenses.  F&A's live pleading includes counter-claims for breach of the Contract, promissory estoppel, declaratory relief, and attorney's fees under chapters 37 and 38 of the Texas Civil Practice and Remedies Code.  Fleming answered with a general denial, a verified plea that he is not liable in the capacity in which he has been sued, and affirmative defenses.  Most of the parties' issues were resolved through partial summary judgments.

In May 2010, F&A and the Barton Group filed cross-motions for summary judgment on the issue of liability under the Contract.[3]  The Barton Group asserted that they were entitled to summary judgment "because the Contract is unambiguous and expressly provides that F&A is responsible for handling and paying for all litigation costs and expenses."  The Barton Group relied on the October 16 Letter and the following language from the Contract to support their claim that F&A wrongfully withheld litigation expenses from the attorney's fees F&A owed J&B under the Contract:  "F&A will be responsible for all future litigation costs, the discovery, preparation for trial and/or appeal of the cases forwarded to F&A by J&B.  These litigation expenses will be deducted from the client's recovery at the time of settlement or recovery."  The Barton Group further argued that there was "absolutely no indication that a single dollar of these 'specially incurred [expenses]' was actually paid" by F&A "on behalf of a single J&B client."  The Barton Group further directed the trial court to the language in the Contract stating that "[t]he obligations of the parties to this agreement are only those expressly stated herein."

---

[2] Although the Barton Group later amended their petition to include claims for declaratory relief and attorney's fees under the Declaratory Judgments Act, no declarations were made in any of the orders or the final judgment.

[3] No one disputed that the Contract was valid and enforceable.

In its motion, F&A sought "judgment as a matter of law that it was not liable on the claim for breach of contract brought against it by" the Barton Group. It asserted that the parties' agreement was a joint venture under Texas law, which meant that F&A and the Barton Group must share "equally" in both profits and losses under Texas joint venture law. F&A further argued that the parties' intent was expressed repeatedly in the Contract to share equally in the payment of expenses not properly chargeable to clients. Thus, it asserted that, taken as a whole, the Contract clearly reflected the parties' intent to share expenses as joint venturers, and the Barton Group's reliance on a single portion of the Contract taken out of context was unreasonable.

On July 7, 2010, the trial court signed an order on these motions, ruling as follows:

> F&A's Motion for Summary Judgment is DENIED;
>
> [The Barton Group]'s Motion for Summary Judgment is GRANTED as to the breach of contract claim;
>
> [The Barton Group]'s Motion for Summary Judgment is DENIED on the attorneys' fees claim[.][4]

This July 7 order was followed by F&A's motion for partial summary judgment, in which F&A asserted, as is relevant here,[5] that it was entitled to a 45% reduction or extinguishment in any liability that it may have to J&B pursuant to the terms of the PITA. The Barton Group responded with a cross-motion for partial

---

[4] On F&A's motion, the trial court clarified this order on December 19, stating that the July order was "silent as to damages" and that the Barton Group's motion had been granted on the breach of contract claim, but not as to the amount of damages. This order concluded, "[E]vidence of the amount of damages will be submitted to a fact finder." On September 6, 2011, the trial court incorporated its liability finding into its partial summary judgment awarding damages to the Barton Group for the October 2006 deductions. This summary judgment order is referenced in the trial court's final judgment.

[5] F&A also challenged Daniel Barton's and the Barton Law Firm's capacity to sue it in this motion, but has abandoned these issues on appeal.

7

summary judgment. The trial court signed an order on the motions, finding in favor of the Barton Group and stating that F&A was "not entitled to an offset or an extinguishment of its liability to the extent of 45 percent based on the [PITA]."

In October 2010, F&A sought summary judgment that the Barton Group was not entitled to attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code as a matter of law. This motion was based on the plain language of the statute, which states, "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8). After considering F&A's motion and the Barton Group's response, the trial court denied the motion on December 2.[6]

In April 2011, the Barton Group deposed F&A's corporate representative, Raymond Kinzer, regarding the October 2006 deductions. Based largely on Kinzer's testimony and a spreadsheet he prepared itemizing the various attorney's fees, the Barton Group filed a motion for partial summary judgment on July 28 seeking to recover $2,352,473.91 in damages for the improper October 2006 deductions. In this motion, the Barton Group conceded that, based on Kinzer's testimony, $21,981.31 of the improper deductions "could possibly qualify as 'local counsel' fees under the Contract." F&A responded to this motion, and the trial court granted in part and denied in part the partial summary judgment, awarding the Barton Group $2,330,492.00 in contractual damages caused by improper deductions from the October 2006 distribution only as to F&A.[7]

---

[6] F&A re-raised this issue in its post-trial and post-judgment briefing.

[7] The trial court denied the Barton Group's motion with respect to the $21,981.31 that they conceded could have qualified as local counsel fees under the contract. The trial court further denied all damages with respect to George M. Fleming.

That same date, the Barton Group also moved for partial summary judgment on "certain expense reimbursements and earned attorneys' fees." In this motion, the Barton Group asserted that F&A owed it additional contractual damages of $330,488.93 in unpaid expense reimbursements and new surgery guarantee fees.[8] F&A responded to the motion, acknowledging that certain additional fees and expenses were owed to J&B, but asserted that issues of material fact prevented summary judgment, including the impact of the PITA. The trial court disagreed, granting in part the Barton Group's motion for partial summary judgment and awarding the Baron Group an additional $305,998.00 in damages from F&A.

Later that year in October, the Barton Group sought partial summary judgment that George M. Fleming was personally liable for the contractual obligations incurred by F&A.[9] Fleming and F&A filed a cross-motion for summary judgment, asserting that Fleming is not individually liable for F&A because, among other reasons, Fleming clearly and unambiguously signed the Contract in his representative capacity and the addendum was likewise signed in his representative capacity. The trial court denied the Barton Group's motion and granted Fleming and F&A's cross-motion on Fleming's personal liability on November 29, 2011.

This case was called for a jury trial on the amount of attorney's fees only for the Barton Group on February 27, 2012. The jury found reasonable and necessary attorney's fees through trial of $790,947.00 and additional reasonable and necessary conditional appellate attorney's fees. The trial court signed its final

_____

[8] The Barton Group originally requested a larger amount, but reduced its request to this amount in its supplemental motion and reply to F&A's response to its motion for partial summary judgment.

[9] This motion was amended in November 2011.

9

judgment on March 23, 2012, incorporating the jury's attorney's fees findings. The trial court also incorporated the following pre-trial orders into the judgment:

1. Partial Summary Judgment Regarding Damages (October 2006 Deductions) signed on September 6, 2011, which grants Plaintiffs [the Barton Group] partial summary judgment against Defendant [F&A] in the amount of $2,330,492;[10]

2. Partial Summary Judgment Regarding Certain Expense Reimbursements and Earned Attorneys' Fees signed on December 29, 2011, which grants Plaintiffs partial summary judgment against Defendant [F&A] in the amount of an additional $305,998; and

3. Order on Defendants' Cross-Motion for Summary Judgment Regarding George M. Fleming's Personal Liability signed on November 29, 2011, which grants partial summary judgment in favor of George M. Fleming in his individual capacity.

The trial court further awarded the Barton Group five percent simple interest in prejudgment interest from March 8, 2008, to the day before the judgment was signed on the total of $2,636,490 in damages awarded through the pre-trial partial summary judgments. Finally, the trial court ordered that the Barton Group take nothing on their claims against George M. Fleming, individually. F&A's motion for judgment notwithstanding the verdict or alternatively motion for new trial and the Barton Group's motion to modify the judgment were both overruled by operation of law. This appeal and cross-appeal timely followed.

## II. ANALYSIS

### A.    The Cross-Motions for Summary Judgment

In F&A's first and second issues, it contends that the trial court erred in granting partial summary judgment to the Barton Group regarding (1) F&A's liability on the Contract claim and (2) the impact of the PITA. In cross-appellants

---

[10] See note 4 above.

the Barton Group's first issue, they assert the trial court should not have granted summary judgment in favor of George M. Fleming because he is a party to the Contract and is liable for its breach. All of these issues were determined in the trial court through cross-motions for summary judgment, so we address them collectively first.

*Standard of Review*

We review de novo the trial court's decision to grant a summary judgment. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009). When reviewing cross-motions for summary judgment, we consider both motions and render the judgment that the trial court should have rendered. *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001); *see also Mid–Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 153–54 (Tex. 2010).

The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *see also Appleton v. Appleton*, 76 S.W.3d 78, 83 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We review the summary judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable fact finders could, and disregarding contrary evidence unless reasonable fact finders could not. *Mann Frankfort*, 289 S.W.3d at 848.

*Liability on the Contract*

As noted above, the trial court granted the Barton Group's partial summary judgment motion regarding F&A's liability on the Contract and denied F&A's cross-motion on this issue. In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). In identifying this intent, "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* We begin this analysis with the express language of the contract. *Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 807 (Tex. 2009) (per curiam); *see also Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."). "[I]f the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *J.M. Davidson*, 128 S.W.3d at 229.

Here, as described above, the Barton Group's summary judgment motion focused on the interpretation of paragraph (c) in parts 1 and 2 of the Contract. Both of these paragraphs contain the following sentences: "F&A will be responsible for all future litigation costs, the discovery, preparation for trial and/or appeal of the cases forwarded to F&A by J&B. These litigation expenses will be deducted from the client's recovery at the time of settlement or recovery." The Barton Group attached F&A's October 16 letter, detailing the expenses that F&A had withheld from J&B's share of attorney's fees. According to the Barton Group, all of these expenses were "litigation costs, discovery, trial preparation, and appeal

12

costs," all expenses that F&A was obliged to pay under the express terms of the Contract. The Barton Group further asserted that F&A failed to provide any evidence that the expenses withheld by F&A were traceable to any of the clients referred by J&B. Because F&A had improperly deducted this amount from J&B's fees, the Barton Group alleged that F&A was liable under the Contract.

F&A, on the other hand, asserted that, construing the agreement as a whole, it was clear that F&A and J&B entered into a joint venture agreement as a matter of law. Citing section 152.202 of the Texas Business Organizations Code, F&A argued that equal shares in partnership profits "unequivocally means equal shares in partnership losses." *See* Tex. Bus. Orgs. Code Ann. § 152.202(c) ("Each partner is entitled to be credited with an equal share of the partnership's profits and is chargeable with a share of the partnership's capital or operating losses in proportion to the partner's share of the profits."). Although F&A acknowledged that this section of the Business Organizations Code had not yet been codified when the parties entered into the Contract, it asserted that under both the common law and the statutory law in effect at the time, the result was the same: "an agreement to share equally the profits would imply that they would likewise be charged equally with the losses." *Couder v. Gomez*, 378 S.W.2d 14, 15 (Tex. 1964). F&A further pointed to other parts of the Contract that discussed specific expenses that would either be reimbursed to F&A and J&B out of the attorney's fees before fees were divided or would be allocated to the clients as part of the clients' expenses once a settlement or a recovery on judgment had been obtained as support for its equal share in partnership losses argument.

First, the plain language of the contract shows the parties intended to enter a joint venture agreement as to part two, Future Fen-Phen Business. In this section of the Contract, they explicitly stated it was their intention to "enter into a joint

venture to sign up additional FDA positive cases." Thus, we disagree with F&A's contention in its summary judgment motion that the entire Contract serves as a joint venture agreement because by its explicit terms, only part two of the Contract serves as such.

Moreover, contrary to F&A's arguments in its summary judgment motion, a joint venture is governed by the same rules as a partnership. *See Bank One Tex., N.A. v. Stewart*, 967 S.W.2d 419, 445 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). In most cases, a partnership agreement governs the relationship of the partners. *See id.* The Texas Revised Partnership Act, in effect at the time F&A and J&B entered into the Contract, provided that an agreement to share losses by the owners of a business was not necessary to create a partnership. *See Knowles v. Wright*, 288 S.W.3d 136, 146–47 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing Tex. Rev. Civ. Stat. Ann. art. 6132b–2.03(c)). Thus the mere fact that F&A agreed to "be responsible for all future litigation costs" does not render the Barton Group's suggested interpretation of the Contract "legally incorrect because it is totally at odds with Texas statutory and common law on joint venture."

Further, F&A never established that the expenses deducted from J&B's fees were attributable to the clients that J&B referred to F&A. The only evidence before the trial court at the time that it determined F&A's liability was that F&A had divided the following expenses "proportionally among firms participating" in the nearly 8,000 Fen-Phen cases it had been referred:

> **Common Expenses:** Wyeth declared war on the Plaintiffs' bar in Fen-Phen II. Most of the other law firms either quickly folded and accepted very low settlements for their clients, or permitted large numbers of their cases to be dismissed by failing to comply with mandatory discovery orders. Fleming & Associates met the challenge head on, and attended more than 10,000 depositions, obtained

14

approximately 8,300 client authorizations, produced approximately 12,500 fact sheets and lists of medical providers; and produced more than 8,000 client echocardiogram tapes and reports. Further, the firm tried 27 cases, including trying to verdict the first intermediate opt-out diet drug case and the last intermediate opt-out diet drug case. Thus, common expenses are a deduction from your fees for your proportionate share of expenses associated with meeting these challenges, including but not limited to, hiring and training more than 100 contract lawyers and other contract personnel specifically to assist in the deposition and discovery process. *These expenses are divided among our firms in proportion to our attorney's fee split.*

**Professional Services:** The intensity of the litigation and appellate battles with Wyeth necessitated the hiring of specialized counsel. There were a number of important trials, critical hearings in the federal diet drug litigation, and numerous appeals, including appeals to the Third Circuit Court of Appeals and the United States Supreme Court. In an effort to give us the best chance of prevailing in those matters, we hired appropriate outside counsel to assist us in strategy, briefing and in some· instances even to present specific oral arguments. Thus, this expense is a deduction from fees for your proportionate share of expenses associated with paying various outside counsel, such as trial counsel, local counsel, appellate counsel in the Third Circuit, Supreme Court counsel, and other specialized counsel. *These expenses are divided among our firms in proportion to our attorney's fee split.*

**Advertising Expenses:** Substantial sums of money were advanced or were reimbursed by Fleming & Associates to you for your diet drug advertising to acquire cases. This expense is a deduction from fees for the money advanced or reimbursed by Fleming & Associates for your firm's advertising. *These expenses are divided among our firms in proportion to our attorney's fee split.*

**Communications/Call Centers:** Call centers were utilized to accept the calls of potential clients responding to your advertising. This expense is a deduction from fees for the·money advanced or reimbursed by Fleming & Associates for the call centers utilized for your firm's advertising. *These expenses are divided among our firms in proportion to our attorney's fee split.*

15

(emphasis added).  Nothing in the Contract indicates that either party intended to pay a pro-rata share of expenses that had not been shown to be applicable to the specific clients J&B referred to F&A under the Contract.  *See J.M. Davidson, Inc.*, 128 S.W.3d at 229.

However, on appeal, F&A asserts that the damages that the Barton Group sought consisted of F&A's expenses for outside attorneys.  Such expenses for outside attorneys are, F&A argues, governed by sections 1(d) and 2(d) of the Contract which provides F&A "the right to retain local counsel" and states that "attorney fees payable to local or outside legal counsel under an agreement with F&A or J&B will be paid out of the settlement or recovery before fees are divided."  Thus, F&A insists it was not liable for withholding these amounts from J&B's fees.  We disagree.

First paragraph 1(d) of the Contract specifically relates to the 224 FDA positive cases that J&B would be forwarding to F&A.  Thus, any local or outside counsel referenced in this paragraph relates only to these 224 FDA positive cases and not to a pro-rata share of expenses not shown to be applicable to these particular cases.  *See id.*  Similarly paragraph 2(d) specifically references only local and outside counsel in relation to "the cases forwarded to F&A by J&B."  Again, no reference to pro rata sharing of expenses, even for local or outside counsel, is part of the Contract, drafted by F&A.  *See id.*

In short, the Barton Group, in its summary judgment motion, sought to disallow the expenses F&A deducted in its October 16 Letter.  After reviewing the plain language of the Contract and the description of these expenses, we conclude

that the trial court properly granted summary judgment on liability in the Barton Group's Favor.[11]

For the foregoing reasons, we overrule F&A's first issue.

*The Partial Summary Judgment on the PITA*

In its second issue, F&A urges that the trial court erred by granting the Barton Group's motion for partial summary judgment on the PITA and refusing to reduce F&A's damages by 45%. In its order granting the Barton Group's motion for summary judgment on the PITA and denying F&A's motion, the trial court explicitly stated that the parties sought partial summary judgment, as is relevant here, on F&A's affirmative defense of "offset or partial extinguishment of the damages by 45 percent." The trial court determined that "F&A is not entitled to an offset or an extinguishment of its liability to the extent of 45 percent based on the Profits Interest Transfer Agreement."

A partnership is an entity distinct from its partners. Tex. Bus. Orgs. Code Ann. § 152.056. Partnership property is not property of the partners. *Id.* § 152.101. A partner does not have an interest in partnership property. *Id.* A partner's "partnership interest" includes the partner's share of profits and losses or similar items and the right to receive distributions. *Id.* § 1.002(68). This term does not include the partner's right to participate in management. *Id.* A partner may transfer all or part of his partnership interest. *Id.* § 152.401. "A transferee of a partner's partnership interest is entitled to receive, to the extent transferred,

---

[11] F&A has not challenged separately the Barton Group's two partial summary judgments on damages; thus, we need not discuss whether the Barton Group established its entitlement to these damages. But we note that, as part of its first motion for summary judgment on damages, the Barton Group acknowledged that $21,981.31 "could possibly qualify as 'local counsel' fees under the Contract." The trial court deducted this amount from the damages it awarded the Barton Group.

distributions to which the transferor otherwise would be entitled." *Id.* § 152.404(a).

In F&A's summary judgment motion, it asserted that, pursuant to the PITA, Johnson's 45% interest in any profits, income, revenues, distributions or compensation from J&B had been transferred to F&A. It further argued that there was no basis to refuse to give full force and effect to the PITA because it was undisputed that F&A had paid Johnson the consideration set forth in the agreement and that the transfer to F&A of Johnson's 45% interest was "complete." According to F&A, as a transferee of Johnson's "partnership interest" in J&B, it was entitled to receive any distributions that Johnson would have been entitled to receive. Thus, F&A asserted, it had

> effectively obtained the right to receive the entirety of Nick Johnson's percentage – being 45% – of any and all amounts that the Johnson Barton Joint Venture may recover in this case. Because F&A would be both the payor and the payee as to 45% of any such recovery, the Transfer Agreement has effectively extinguished F&A's liability to the extent of 45% of any damages or other monetary liability that may be awarded in this case.

We conclude that F&A did not establish, as a matter of law, that it was entitled to an extinguishment of 45% of its liability to J&B pursuant to the terms of the PITA. Under the PITA, it is does not appear that Johnson transferred his partnership interest to F&A, as F&A claims. Rather, Johnson transferred to F&A his "right, title and interest in and to any profits, income, revenues, distributions or compensation associated with or flowing from Johnson's 45% interest in" J&B. Indeed, the PITA is an agreement between Johnson and F&A; and it required Johnson to "deliver" the "profits, income, revenues, distributions or compensation associated with or flowing from" his 45% interest in J&B. Thus, it is reasonable to construe this agreement to require Johnson, as a party to the agreement, to receive

18

"disbursements" from J&B to which he was entitled, if any, either during his tenure as a partner or after the partnership was wound down,[12] and then convey those disbursements to F&A under the terms of the PITA.

Moreover, at the time that the Barton Group filed suit against F&A, Johnson had withdrawn from J&B.[13]  Indeed, Johnson withdrew from J&B on May 8, 2009, by notifying J&B in writing that he was withdrawing as a partner and stating that, as of that date, he "no longer owns any legal, beneficial, or other rights, title, or interests in any way related to the Joint Venture and/or the ownership of the Joint Venture."  *See id.* § 152.501(a), (b)(1)(A) (providing that a person ceases to be a partner on the occurrence of an event of withdrawal and that such an event occurs on the receipt by the partnership of notice of the partner's express will to withdraw as a partner on the date on which the notice is received).  F&A made no mention of the impact of Johnson's withdrawal from J&B on its right to any distributions after he had withdrawn.  On appeal, F&A attempts to fill this gap, but summary judgments must stand or fall on the grounds raised therein; we cannot consider grounds raised for the first time on appeal as a basis for affirming or reversing the trial court's judgment.  *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

Turning to the Barton Group's motion, the Group asserted that J&B's contractual rights to any attorney's fees obtained through this breach of contract action were partnership property owned by J&B, not by its partners.  Thus, the Group argued that this partnership property was not and could not be transferred in

---

[12] We express no opinion regarding what rights, if any, Johnson may have to the contractual damages J&B receives from F&A as part of this lawsuit or what rights, if any, F&A may have pursuant to the PITA to any sums to which Johnson may be entitled from J&B.

[13] A partnership continues after an event of withdrawal.  Tex. Bus. Orgs. Code Ann. § 152.502.  The event of withdrawal affects the relationships among the withdrawn partner, the partnership, and the continuing partners.  *Id.*

whole or in part to F&A by Johnson. We agree. As noted above, a partnership is a separate legal entity from its partners. *See* Tex. Bus. Orgs. Code Ann. § 152.056. Any legal fees obtained by J&B through this lawsuit for F&A's breach of the Contract with the partnership are partnership property. *See id.* § 152. 101. Thus, F&A is not entitled to an extinguishment, or offset, of its damages to the extent of 45% pursuant to the PITA because the PITA is an agreement between it and Johnson, not it and J&B. *See Alon USA, LP v. State*, 222 S.W.3d 19, 29 (Tex. App.—Austin 2005, pet. denied) ("[I]n order for one demand to be set off against another, both demands *must mutually exist between the parties*." (emphasis added) (citing *Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust Co.*, 667 S.W.2d 572, 575 (Tex. App.—Dallas 1984, no writ)). The PITA only provides F&A with a remedy against Johnson, not J&B, as Johnson and J&B are not one and the same entity. And, as noted above, Johnson is not a party to this proceeding.

Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of the Barton Group on F&A's attempt to rely on the PITA to reduce or extinguish damages owed to J&B by 45%.

We therefore overrule F&A's second issue.

*The Partial Summary Judgment on Fleming's Individual Liability*

In its first issue in its cross appeal, the Barton Group urges that the trial court erred in granting summary judgment in favor of George Fleming because he is individually a party to the Contract.[14] Specifically, the Barton Group claims that Fleming is individually liable because he signed the addendum to the Contract in his individual capacity and it contains no indication that it was signed in his "representative capacity."

---

[14] Fleming filed a verified plea denying that he was liable in the capacity in which he was sued.

20

We begin by noting that the Barton Group set forth two grounds in their motion for partial summary judgment seeking to hold Fleming personally liable:

1. Fleming's signing of the February 28, 2002 addendum without indicating he was signing in a representative capacity operated to make him individually liable on the February 6, 2002 Contract; and

2. Fleming's testimonial and documentary admissions conclusively established his personal liability under the Texas Business Organizations Code.

On appeal, the Barton Group only asserts the first ground and makes several additional arguments that were not presented in their summary judgment motion. But as discussed above, we may not consider on appeal grounds not presented to the trial court as a basis for affirming or reversing the trial court's judgment. *See McConnell*, 858 S.W.2d at 341. We thus confine our analysis to the sole issue of whether Fleming, by failing to note that he was signing the addendum in his representative capacity, became individually liable on the Contract. We conclude that he did not.

Generally, an agent for a disclosed principal is not personally liable on contracts that he signs for the principal. *See Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 45 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also* Restatement (Third) of Agency § 6.01 (2006). This general rule applies here: the Contract creates a contractual relationship between two law firms, J&B and F&A. The Contract speaks repeatedly of the obligations of the law firms, including dividing expenses and fees, as well as other provisions. Part 2 of the Contract specifically mentions "both parties to this agreement." The Contract is written on F&A's letterhead and is addressed to Nick Johnson and Dan Barton at "The Johnson and Barton Law Firms." It is signed by Fleming and provides a space for

21

both Nick Johnson and Dan Barton to sign on behalf of "Nick Johnson and Dan Barton Law Firms." Both Johnson and Barton signed the agreement, but handwrote above their signatures "as modified by the attached addendum 2/28/02"

The addendum, conversely, is written on letterhead labeled "Johnson Law Firm * Barton Law Firm." It is addressed to George Fleming and Jim Doyle at F&A's address. The letter provides, in its entirety, as follows:

> Dear George and Jim:
>
> We are in receipt of a signed agreement dated February 6, 2002 from George Fleming. This letter shall serve as an addendum to the February 6, 2002 agreement by changing Section III., Other Provisions, subpart F. from 10 cases to 30 cases. These cases shall only be moderate mitral regurgitation with an atrium level of 5.3 or more in poor venues. These cases will be replaced with more than 30 non-advertising cases.
>
> By signature below, we agree to all the terms of the February 6, 2002 agreement as modified by this addendum.

Both Barton and Johnson signed this letter; Fleming also signed above a line provided below their signatures to the left of the page with "GEORGE FLEMING" typed below it.

An agent may be liable if he substitutes himself for the principal, or if he consents to liability in addition to the principal. *Hull*, 365 S.W.3d at 45. This consent may be express or can arise from the circumstances. *Id.* At the time that Fleming signed this addendum, the Barton Group was aware that he was acting as an agent for F&A. *See, e.g.*, *Eppler, Guerin & Turner, Inc. v. Kasmir*, 683 S.W.2d 737, 738–39 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (explaining that attorney for disclosed client is not liable on a contract unless there is an express or implied agreement for "specially imposing personal liability"). We see nothing in this addendum that would alter the fact that Fleming was acting as an agent for a

22

disclosed principal. Accordingly, after reviewing the evidence under the standard of review discussed *supra* in part II.A, we conclude that Fleming established he was entitled to judgment as a matter of law that he was not personally liable on the Contract.

We overrule the first issue of cross-appellant, the Barton Group.

## B. Award of Attorney's Fees from F&A

In its third issue, F&A contends that the trial court erred in awarding attorney's fees in favor of the Barton group under Texas Civil Practice and Remedies Code section 38.001(8). As noted above, F&A challenged the Barton Group's entitlement to statutory attorney's fees several times in the trial court.

Texas follows the American Rule, which provides that litigants may recover attorney's fees only if specifically provided for by statute or contract. *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). Here, the parties agree that the only possible authority for recovery of attorney's fees in this case is section 38.001(8) of the Texas Civil Practice and Remedies Code (the TCPRC), which provides that a "person" may recover attorney's fees from "an individual or corporation" for a claim under an oral or written contract. *See* Tex. Civ. Prac. & Rem. Code. Ann. § 38.001(8). The parties further agree that F&A is a partnership, specifically a limited liability partnership (LLP), but they disagree that section 38.001 authorizes the recovery of attorney's fees against an LLP.

The availability of attorney's fees under a particular statute is a question of law for the court. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). In construing a statute, our goal is to determine and give effect to the Legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000) We look first to the statute's language to determine that intent, as we consider it "a fair

assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex.1999). But if a statute defines a term, a court is bound to construe that term by its statutory definition. Tex. Gov't Code Ann. § 311.011(b); *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002).

Chapter 38 of the TCPRC does not include any definitions. But section 1.002 of the TCPRC provides that the Code Construction Act applies to the construction of each provision in the TCPRC, except as otherwise expressly provided by the TCPRC. Tex. Civ. Prac. & Rem. Code Ann. § 1.002. In turn, the Code Construction Act defines the term "person" to include "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." Tex. Gov't Code Ann. § 311.005(2). Thus, all of the Barton Group entities fall under the definition of "person" and are entitled to recover attorney's fees from an "individual or a corporation."

However, neither the terms "individual" nor "corporation" are defined in the Code Construction Act or in Chapter 38 of the TCPRC. When a statute contains undefined terms, the ordinary meanings of these terms should be applied. *See Tijerina v. City of Tyler*, 846 S.W.2d 825, 827 (Tex. 1992). Here, there is no dispute that F&A is neither an individual nor a corporation: it is an LLP. Further, the Barton Group has not cited and our research has not revealed a definition of "individual" or "corporation" that includes any type of partnership.

Additionally, the statutory interpretation doctrine known as *expressio unius est exclusion alterious* supports this reasoning. This maxim is an aid to determine legislative intent and reflects the principle that the expression of one implies the

24

exclusion of another. *See In re Platinum Energy Solutions, Inc.*, —S.W.3d—, No. 14-13-00681-CV, 2014 WL 27010, at *5 (Tex. App.—Houston [14th Dist.] Jan. 2, 2014, orig. proceeding) (citing *Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999)). And although this doctrine should not be mechanically applied to compel an unreasonable interpretation,[15] the circumstances under which this statute was enacted and the former statutory provision both support our reasoning, as well. *See* Tex. Gov't Code Ann. § 311.023(2), (4) (providing that, when construing a statute, whether it is ambiguous on its face or not, courts may consider, *inter alia*, the circumstances under which it was enacted and former statutory provisions).

The predecessor statute, article 2226 of the Texas Revised Civil Statues, provided that "any person, corporation, partnership, or other legal entity" could recover fees from a "person or corporation." *See* Gregory Scott Crespi, *Who is Liable for Attorney's Fees Under Texas Civil Practice & Remedies Code Section 38.001 in Breach of Contract Litigation*, 65 SMU L. Rev. 71, 73 (Winter 2012). When the Legislature re-codified article 2226 into Chapter 38 of the Texas Civil Practice and Remedies Code, it intended no substantive change. *Id.* Indeed, the revisor's note indicates that the term "person" was changed to "individual" primarily to avoid application of the Code Construction Act's definition of "person," which could potentially subject governmental entities to liability. *Id.* at 73–74. "But general statements by the Legislature that 'no substantive change in the law is intended' must be considered with the clear, specific language used" in section 38.001. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). "[W]hen, as here, specific provisions of a 'nonsubstantive' codification and the code as a whole are direct, unambiguous, and cannot be reconciled with prior

---

[15] *In re Platinum Energy*, 2014 WL 27010, at *5 (quoting *Mid-Century*, 997 SW.2d at 274).

law, the codification rather than the prior, repealed statute must be given effect."[16] *Id.* at 286.

Thus, under the plain language of section 38.001(8), a person may not recover attorney's fees against a partnership. *Cf. Ganz v. Lyons P'ship, L.P.*, 173 F.R.D. 173, 176 (N.D. Tex. 1997) (holding that TCPRC section 38.001(8) authorizing recovery of attorney's fees against "individual or corporation" does not provide for award of attorney's fees against limited partnership). Without any other authority for the award of attorney's fees to the Barton Group in this case,[17] we conclude that the trial court erred in making such an award.[18]

Accordingly, we sustain F&A's third issue.

---

[16] When the drafters codified the predecessor statute into TCPRC section 38.001, they were aware of the Code Construction Act's definition of "person," yet they chose to change this word in the section describing against whom attorney's fee claims may be made. *Ganz v. Lyons P'ship, L.P.*, 173 F.R.D. 173, 176 (N.D. Tex. 1997). The Legislature chose to substitute the more narrow word "individual" for the much broader word "person."

> The natural and logical explanation is that the [L]egislature, knowing that the Code Construction Act defined "person" to include "partnerships," among others, thereby intended to exclude those who by definition are not "individuals" or "corporations." It excluded "partnerships." To now read "partnerships" back in would defy the ordinary expectation of the legislative act.

*Id.*

[17] The Barton Group cites several cases in which statutory attorney's fees have been awarded against various "non-corporate domestic entities like limited liability partnerships." However, the specific issue of whether attorney's fees were *available* against those entities was not addressed in any of those cases. The Barton Group acknowledges as much in its brief: "Although no Texas court has stated expressly that attorneys' fees under Chapter 38 may be recovered against non-corporate domestic entities, like limited liability partnerships, the Texas Supreme Court, this Court and other Texas courts have permitted such recoveries."

[18] Although section 38.005 of the TCPRC provides that the attorney's fee statute "shall be liberally construed to promote its underlying purposes," it is difficult to conceive that an underlying purpose is to find liability for such fees against an entity excluded by a statutory amendment. *Ganz*, 173 F.R.D. at 176.

## C.    Prejudgment Interest

In the Barton Group's second issue, they contend the trial court erred in calculating prejudgment interest. In Texas, prejudgment interest accrues beginning on the 180th day after the defendant receives written notice of the claim or on the date suit was filed, whichever occurs first. Tex. Fin. Code Ann. § 304.104 (governing claims of wrongful death, personal injury, and property damage); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998) (adopting rule from predecessor to section 304.104 for general application under the common law). We review a trial court's award of prejudgment interest under an abuse of discretion standard. *See Hand & Wrist Center of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Under this standard, we will not disturb a trial court's findings on factual issues unless the court reasonably could have reached only one decision and failed to do so. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992).

Here, the trial court awarded prejudgment interest to accrue 180 days after a September 10, 2007 email from Barton to Fleming. In this email, Barton stated, "You have breached our 2002 Fen-Phen II agreement. You owe Barton and Johnson $2,352,473.00 that you outlined in your October 16, 2006 letter as your overhead and expense wrongfully charged to The Johnson and Barton Law Firms. You are currently wrongfully withholding $693,690.00 that is clearly owed to us."

The Barton Group, in contrast, asserts that prejudgment interest should have started accruing on April 29, 2007—180 days after Bob Chaffin sent the following email to George Fleming on October 31, 2006 (the Chaffin email):

> George - I have reviewed the applicable contract and under the terms
> of the agreement you cannot charge the common expense item back to

us. The contract calls for your firm to be responsible for discovery and basically all of the common expense items are related to handling discovery on the cases. I would ask that you take a closer look at this and reconsider your decision. I understand that you incurred more expense than you originally anticipated but that does not change the fact that your firm agreed to be responsible for all discovery. I continue to believe that it would be in the best interest of all concerned for us to sit down and discuss this issue as well as certain other accounting issues. Think it over and let me know.

We hold that the Chaffin email is not "written notice of a claim." "A 'claim' is 'a demand for compensation or an assertion of a right to be paid.'" *Johnson & Higgins*, 962 S.W.2d at 531. There is nothing in this email notifying F&A that any member of the Barton Group is demanding compensation or asserting a right to be paid. *See Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex. App.—Austin 1995, writ denied) ("The fact that presentment [of the written notice of a claim] may be informal does not obviate the necessity for assertion of a claim."). Simply put, Bob Chaffin had no dog in this hunt; there is nothing to indicate he was acting on behalf of the Barton Group in sending this email. Moreover, nothing in this email suggests that Chaffin, even if he were acting on behalf of the Barton Group, was making a demand for compensation or asserting a right to be paid. *See Johnson & Higgins*, 962 S.W.2d at 531; *Robinson*, 894 S.W.2d at 528.

Under these circumstances, we cannot say the trial court abused its discretion in determining that the September 10, 2007 email from Barton to Fleming provided F&A with written notice of a claim. Accordingly, the trial court did not err in calculating prejudgment interest.

We overrule the Barton Group's second cross appellate issue.

### III. CONCLUSION

We have sustained F&A's third issue regarding the award of attorney's fees to the Barton Group. Accordingly, we modify the trial court's judgment to remove all portions awarding attorney's fees, including appellate attorney's fees, to the Barton Group. Having overruled the remainder of the issues for both F&A and the Barton Group, we affirm the judgment as modified.

/s/      Sharon McCally
          Justice

Panel consists of Justices Christopher and McCally. (Former Justice Jeffrey V. Brown not participating).