# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**
## NO. 02-17-00253-CV


ERIC FREEMAN AND ERIC                                      APPELLANTS
FREEMAN & COMPANIES, INC.

V.

CHARLES WILLIS                                               APPELLEE

----------

## FROM THE 442ND DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 15-05860-442

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellants Eric Freeman and Eric Freeman & Companies, Inc. appeal from a final judgment following a bench trial in favor of Appellee Charles Willis in this contract dispute stemming from the parties' efforts to sell Willis's exotic car and to buy him a new one. Appellants' three issues challenge Freeman's personal

---

[1]*See* Tex. R. App. P. 47.4.

liability under the judgment and the trial court's contractual-liability and attorney's-fees findings and conclusions. We will affirm as modified.

## II. BACKGROUND

Willis is a board-certified anesthesiologist who specializes in pain management. Freeman buys and sells used cars through a corporation, Eric Freeman and Companies, Inc., which does business as Trendsetter Motors. Willis and Freeman had done business several years before the events that are the subject of this appeal.

Sometime between March and May 2014, Willis contacted Freeman about selling his 2004 Lamborghini Gallardo on consignment. When Willis asked Freeman what kind of commission he would charge, Freeman responded that he would add the commission on top of the vehicle's sale price, meaning that the commission would not be taken from the funds that Willis obtained from the vehicle's sale. Willis delivered the vehicle and its title to Freeman sometime around mid-May.

Willis had originally wanted $110,000 for the 2004 Lamborghini, but he later agreed with Freeman to sell it for $85,000. Willis intended to apply the funds that he received from the sale towards the purchase of a new exotic car. To cover Freeman's commission for his role in acquiring the new vehicle, Willis and Freeman had an arrangement whereby money would flow to Freeman if Willis wrote prescriptions to be filled at a compound pharmacy designated by

2

Ryan Hunt, an acquaintance of Freeman's who markets and sells medical supplies.[2]

In mid-June 2014, the 2004 Lamborghini was transferred to Freeman's company and used as collateral for a loan that Freeman's floor-plan lender financed in the amount of $61,400. Willis claims that he never agreed to a $61,400 trade-in sale, and he denied that the signature on the assignment of title was his, but around the same time, he wrote a check to Freeman's company in the amount of $111,497 to be used towards the purchase of a new vehicle. Freeman's company sold the 2004 Lamborghini several months later for approximately $85,000. Freeman retained the difference between the sale price and the $61,400 collateral figure.

Willis eventually decided to purchase a 2012 Lamborghini Gallardo Spyder that was located in New York for $169,000. Freeman had sufficient funds on hand to cover the purchase price ($61,400 + $111,497 = $172,897), but he instead financed the August 18, 2014 purchase through his floor-plan lender, affording him a seven-to-fourteen-day window to return the vehicle. Freeman's company issued temporary license plates and delivered the 2012 Lamborghini to Willis on August 23, 2014, but Freeman neither delivered the vehicle's title to Willis nor immediately repaid his lender because, according to Freeman, the "deal wasn't done."

---

[2]Freeman testified that this was also the commission agreement for the sale of the 2004 Lamborghini. Hunt testified and denied that any such agreement ever existed.

3

Freeman was alluding to the fact that his prescription-writing commission agreement with Willis had not worked as he thought it would. Willis wrote prescriptions for Hunt's pharmacies until Hunt ended the arrangement when Willis refused to use a particular medical device, but Freeman never received any monies from Hunt. When it became clear that he would not receive his commission—*after* the 2012 Lamborghini had been purchased—Freeman demanded that Willis pay him a 20% commission on both the sale of the 2004 Lamborghini and the purchase of the 2012 Lamborghini. Willis declined and asked Freeman to transfer the 2012 Lamborghini's title to him, but Freeman refused to do so until he was paid his commissions.[3]

Willis sued Appellants for breach of contract, fraud, conversion, and attorney's fees. He alleged in part that Appellants had breached their agreements to sell the 2004 Lamborghini and to buy the 2012 Lamborghini by, respectively, selling the 2004 Lamborghini for approximately $60,000 instead of $85,000 and by demanding an additional $20,999 in exchange for the 2012 Lamborghini's title. Appellants answered and filed counterclaims against Willis for breach of contract and for attorney's fees, averring that Willis had agreed, but had failed, to pay Freeman a 20% commission on both the sale of the 2004 Lamborghini and the purchase of the 2012 Lamborghini.[4] Following a bench trial,

---

[3]Freeman paid his lender before December 2014, but only after incurring approximately $75,000 in interest charges.

[4]Earlier, the trial court had granted Appellants a new trial after granting Willis a default judgment against Appellants.

the trial court signed a final judgment in favor of Willis and against Appellants jointly and severally, awarding Willis offset damages in the amount of $8,507 and attorney's fees in the amount of $22,148 and ordering Appellants to deliver the 2012 Lamborghini's title to him. The trial court issued findings of fact and conclusions of law.

## III. FREEMAN'S INDIVIDUAL LIABILITY

In their first issue, Appellants argue that the trial court erred by imposing personal liability upon Freeman for the damages and attorney's fees that were awarded to Willis because there is no evidence, or insufficient evidence, that Freeman was a party, individually, to the oral agreements involving the 2004 and 2012 Lamborghinis. Disagreeing, Willis directs us to evidence that he contends shows that Freeman pledged his personal responsibility for the agreements, contractually obligating him to uphold the bargains.[5]

---

[5]Willis also responded in part that Appellants had failed to challenge any particular findings of fact or conclusions of law. Appellants replied that they were challenging conclusions of law numbers 2, 3, 4, 5, 6, 7, and 8 but none of the findings of fact. The findings and conclusions do not specifically address Freeman's personal liability but instead repeatedly refer to "Defendants" plurally, effectively imposing personal liability upon Freeman. We reasonably construe Appellants' first issue to challenge the findings and conclusions that could implicate Freeman's personal liability for the damages and attorney's fees. *See Shaw v. Cty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied) ("A challenge to an unidentified finding of fact may be sufficient if we can fairly determine from the argument the specific finding of fact which the appellant challenges.").

## A.    Standard of review

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards.  *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.  *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999).  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.  *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing

6

all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

We review conclusions of law to determine their correctness based upon the facts, but we will not reverse because of an erroneous conclusion if the trial court rendered the proper judgment. *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)); *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App.—Fort Worth 2012, no pet.).

## B.    No evidence of individual liability

"A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations." *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). When an officer of a corporation enters into an agreement on behalf of a corporation as an agent of the corporation, the agreement is the corporation's, and the officer is not individually liable thereunder. *Ward v. Prop. Tax Valuation, Inc.*, 847 S.W.2d 298, 300 (Tex. App.—Dallas 1992, writ denied); *see Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) ("As a general rule,

7

the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts.").

Agency law shares the same premise—generally, an agent for a disclosed principal is not personally liable on a contract that he signs for the principal. *Fleming & Assocs., L.L.P. v. Barton*, 425 S.W.3d 560, 573 (Tex. App.—Houston [14th Dist.] 2014, pets. denied). However, where "it is determined that the agent has substituted his own responsibility for that of his principal, or has pledged his own responsibility in addition to that of his principal, he will be bound accordingly." *Am. Nat'l Bank v. Am. Loan & Mortg. Co.*, 228 S.W. 169, 171 (Tex. Comm'n App. 1921, judgm't adopted). Under these circumstances, "liability is not predicated upon his agency, but upon his contract obligations." *Id.*

We agree with Appellants that there is no evidence that Freeman subjected himself to personal liability under the agreements for the sale of the 2004 Lamborghini and the purchase of the 2012 Lamborghini.

The trial court admitted into evidence a handful of text messages between Freeman and Willis regarding the transactions. The texts that were sent by Freeman are identified as being from "Eric (trendsetters"—the latter term being a reference to the entity that Eric Freeman & Companies, Inc. does business as.

Regarding the purchase of the 2012 Lamborghini, the check that Willis wrote in the amount of $111,497 was made out to "Trendsetter Motors," and it was deposited into an account belonging to "Eric Freeman & Companies, INC. DBA Trendsetter Motors." Also, the purchase contract for the 2012 Lamborghini

8

from Manhattan Motorcars identified "Trendsetter Motors" as the purchaser, and an inventory sheet shows that "Eric Freeman & Companies, INC. DBA: Trendsetter Motors" purchased the 2012 Lamborghini.

Regarding the sale of the 2004 Lamborghini, the vehicle's title identifies "Trendsetter Motors" as the purchaser, and the funds that Freeman obtained from his floor lender using the 2004 Lamborghini as collateral were included in a check that was made out to "Eric Freeman & Companies, INC. DBA: Trendsetter MO."

Notwithstanding this uncontradicted documentary evidence, perhaps the strongest evidence that Freeman did not bind himself individually came from Willis's own testimony on cross-examination:

> Q.    And would it be correct that at all times you were dealing with [Freeman's] company as being the person -- as being the entity that was handling the transaction?
>
> A.    Yes.

This evidence confirms that Willis had full knowledge that Freeman was acting as an agent on behalf of a disclosed principal, Eric Freeman & Companies, Inc. *See Fleming & Assocs.*, 425 S.W.3d at 574 (disagreeing that agent was individually liable in part because "[a]t the time that Fleming signed this addendum, the Barton Group was aware that he was acting as an agent for F & A"); *Burch v. Hancock*, 56 S.W.3d 257, 262 (Tex. App.—Tyler 2001, no pet.) (overruling challenge to finding of individual liability in part because appellee had no actual knowledge that agent was acting on behalf of principal).

9

Willis counters that some evidence exists to support Freeman's individual liability because at several points during his testimony about the agreements involving the vehicles and the commissions, Freeman referred to himself individually. Specifically, Willis observes that Freeman "referred to himself as being the one to 'mark up' the 2004 Lambo with *his* commission," "told Dr. Willis that *he* could get the 2012 Lambo for $169,000," "admitted that, as part of the side deal, *he and his company* would" make money from the prescription-writing agreement, and "referred to himself as being entitled to a commission." [Emphases in original.]

The trial court could not have reasonably inferred from Freeman's references that he pledged his own personal responsibility for Eric Freeman & Companies, Inc.'s agreements because, simply put, Freeman was speaking as any normal human being does every day. It would be ridiculous if, to avoid subjecting himself to personal liability for Eric Freeman & Companies, Inc.'s contractual obligations, Freeman had to specifically clarify each time he said "I" or "me" during his testimony that he actually meant "I" or "me" *as the corporate agent for Eric Freeman & Companies, Inc.* Considering Freeman's testimony in light of the record evidence above, Freeman's use of first-person pronouns alone is no evidence that he expressly or impliedly pledged his personal responsibility for the obligations of Eric Freeman & Companies, Inc.

The evidence conclusively demonstrates that all of Willis's dealings occurred with Freeman only as an agent for Eric Freeman & Companies, Inc. We sustain Appellants' first issue.

## IV. BREACH OF CONTRACT

In their second issue, Appellants argue that there is no evidence, or insufficient evidence, that either Freeman or Eric Freeman & Companies, Inc. breached an oral agreement with Willis. We determined immediately above that Freeman's interactions with Willis occurred only as an agent for Eric Freeman & Companies, Inc., so we address Appellants' evidentiary-sufficiency complaint only insofar as it is directed only at Eric Freeman & Companies, Inc.[6]

To prevail on a breach of contract claim, the plaintiff must establish (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages. *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 323–24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The elements of a valid and binding contract are (1) an offer, (2) an acceptance in strict compliance with the offer's terms, (3) a meeting of the minds, (4) consent by both parties, (5) execution and delivery, and (6) consideration. *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied). The elements of written and oral contracts are the same. *Id.*

---

[6]Appellants challenge conclusions of law numbers 2–8.

11

Appellants direct us to evidence that when the 2004 Lamborghini did not sell on consignment for $85,000, Willis signed the title over to Eric Freeman and Companies, Inc., who used the vehicle as collateral for a $61,400 loan, which was ultimately applied towards the purchase of the 2012 Lamborghini. In other words, Appellants contend that when Willis transferred the 2004 Lamborghini to Eric Freeman & Companies, Inc., Willis no longer retained any ownership interest in the vehicle, and it was no longer subject to being sold on consignment for the agreed-upon price of $85,000. Regarding the 2012 Lamborghini, Appellants contend that there is no evidence that Willis paid Freeman a commission, apparently implying that the obligation to transfer the vehicle's title to Willis was never prompted, thus precluding a finding that Freeman failed to comply with the agreement to purchase the 2012 Lamborghini.

Appellants' arguments are flawed for a reason that we see all too often in evidentiary-sufficiency issues: they disregard the standards of review and direct us to evidence that supports only Appellants' theory of the case—evidence that the trial court impliedly rejected in arriving at its judgment. The evidence viewed in the light most favorable to the trial court's findings shows that the parties agreed to sell the 2004 Lamborghini for $85,000, that Willis never agreed to transfer the vehicle to Eric Freeman & Companies, Inc. or to use it as collateral for a $61,400 loan, and that Appellants never credited Willis for the full $85,000 after the vehicle was sold by Eric Freeman & Companies, Inc. for that amount.

12

As for the 2012 Lamborghini, Freeman testified that he refused to provide Willis with the vehicle's title because Willis did not pay Freeman a commission, but there was evidence that the parties had alternative arrangements for Freeman's commissions and that Freeman did not request a 20% commission until *after* the 2012 Lamborghini had been purchased. Thus, there was evidence that no binding agreement for a 20% commission ever existed, a fact that even Freeman seemed to concede:

> Q. . . . Are you aware that Defendant's counterclaim alleges that Dr. Willis agreed to pay 20 percent?
>
> A. Yes.
>
> Q. Okay. But that's not true, is it?
>
> A. No.

Properly applying the standards of review, the evidence is both legally and factually sufficient to support the trial court's findings related to the agreements to sell the 2004 Lamborghini and to purchase the 2012 Lamborghini. *See Cent. Ready Mix Concrete Co.*, 228 S.W.3d at 651; *City of Keller*, 168 S.W.3d at 807, 827; *Pool*, 715 S.W.2d at 635; *Cain*, 709 S.W.2d at 176. The trial court's relevant conclusions of law are not erroneous. We overrule Appellants' second issue.

### V. ATTORNEY'S FEES

In their third issue, Appellants argue that the trial court reversibly erred by failing to award Eric Freeman & Companies, Inc. attorney's fees because the evidence demonstrates, as a matter of law, that Willis breached the oral

13

agreements to pay Freeman a 20% commission.[7]  Appellants established nothing as a matter of law.  For the sale of the 2004 Lamborghini, Willis testified that Freeman agreed to add his commission on top of the vehicle's sale price.  For the purchase of the 2012 Lamborghini, Willis testified that he and Freeman had an arrangement whereby money would flow to Freeman if Willis wrote prescriptions to be filled at a compound pharmacy designated by Hunt.  And as we explained, there was evidence that the parties never had a binding agreement for Willis to pay Freeman a 20% commission for either the sale of the 2004 Lamborghini or the purchase of the 2012 Lamborghini.  The trial court properly denied Appellants' request for attorney's fees.  We overrule their third issue.

## VI. CONCLUSION

Having sustained Appellants' first issue, we modify the trial court's final judgment to provide that only Eric Freeman & Companies, Inc. is responsible for the damages, attorney's fees, costs, and interest ordered therein.  Having overruled Appellants' remaining issues, we affirm the final judgment as modified. *See* Tex. R. App. P. 43.2(b).


/s/ Bill Meier
BILL MEIER
JUSTICE


---

[7]Appellants challenge conclusions of law numbers 2–8.

14

PANEL:  WALKER, MEIER, and KERR, JJ.

DELIVERED:  May 3, 2018