# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31000

United States Court of Appeals
Fifth Circuit

**FILED**

September 8, 2015

Lyle W. Cayce
Clerk

DEAN NAPOLI,

Plaintiff–Appellant,

v.

JOHNSON & JOHNSON, INC.,

Defendant–Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:11-CV-754

Before STEWART, Chief Judge, and KING and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:*

Plaintiff–Appellant Dean Napoli appeals from a grant of summary judgment for Defendant-Appellee Johnson & Johnson, Inc. on his ERISA claim for the denial of post-termination severance benefits. Because the plan administrator's denial of severance benefits was not supported by substantial evidence, we REVERSE and REMAND.

---

* Pursuant to Fifth Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Cir. R. 47.5.4.

No. 14-31000

## I.

Scios, Inc. hired Napoli in July 2001. In April 2003, Janssen Pharmaceuticals, Inc., owned by Johnson & Johnson, acquired Scios. Napoli, during his employment with Johnson & Johnson, participated in the company's Severance Pay Plan (SPP). In September 2010, Johnson & Johnson fired Napoli, prompting him to apply for severance pay. Napoli initially was told that he was eligible for severance benefits, but Johnson & Johnson's general counsel later advised Napoli's attorney, in writing, that Napoli was ineligible for severance pay because he was terminated for violating company policies. In the letter, the general counsel stated that Napoli was terminated "for a Group I violation." The general counsel also asserted that Napoli had "wrongfully expensed over $3,000 on his American Express account."

In February 2012, Napoli's attorney again requested severance pay on Napoli's behalf. Johnson & Johnson responded in a March 2012 letter that Napoli was ineligible for severance benefits because he violated Article 4 of the SPP, which states, in pertinent part: "[a]n Eligible Employee is not eligible for the benefits provided . . . if his or her employment is terminated as a result of any one of the following events . . . *v.* discharge for (i) misconduct, (ii) a violation of applicable rules, policies and/or practices, or (iii) conduct considered by the Pension Committee to be detrimental to a Johnson & Johnson Company." Napoli appealed the decision, stated that he did not violate the policy, and requested more information related to the policy and his alleged violation. Napoli asked the company to "identify the specific facts and circumstances" supporting the company's claim that he violated its policy and stated that "a general, blanket allegation . . . that I violated a Performance and Conduct Standards Policy is impossible for me to defend." In a May 2012 letter, Johnson & Johnson responded by providing the company's Performance and Conduct Standards Policy No. N2847 and a copy of the September 2010 letter stating

2

No. 14-31000

that Napoli was ineligible for severance. In August 2012, the Benefit Claims Committee completed its review of Napoli's appeal and denied him severance pay.

Napoli sued Johnson & Johnson in state court, alleging that the company fired him without just cause and violated both the Employee Retirement Income Security Act of 1974 (ERISA) and the Age Discrimination Employment Act of 1967 (ADEA).[1] Johnson & Johnson removed the case to federal court and counterclaimed for approximately $3,000 in unauthorized credit card charges on Napoli's company-issued credit card. Napoli conceded that his claim for severance benefits was governed by ERISA. Both parties moved for summary judgment on Napoli's ERISA claim, and Napoli moved for summary judgment on the company's counterclaim. The district court determined that "the decision to deny [Napoli] severance pay was based on a reasonable interpretation of the severance benefits program," and thus the Administrator did not abuse its discretion. Accordingly, the district court granted Johnson & Johnson's motion for partial summary judgment on the ERISA claim and denied Napoli's motion.[2] Napoli appealed.

## II.

"We review the district court's grant of summary judgment in an ERISA case *de novo*, applying the same standard as the district court." *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010). Where, as here, "a benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the administrator's decision is reviewed for abuse of discretion.

---

[1] The parties stipulated to dismiss all of Napoli's age discrimination claims, with prejudice.

[2] The district court also granted Napoli's motion for summary judgment on the company's counterclaim, which is not at issue on appeal.

No. 14-31000

*Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) (internal quotation marks omitted). "A plan administrator abuses its discretion if it acts 'arbitrarily or capriciously.' A decision is arbitrary and capricious only if it is 'made without a rational connection between the known facts and the decision or between the found facts and the decision.'" *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 508 (5th Cir. 2013) (internal citation omitted), *cert. denied*, 134 S. Ct. 1761 (2014). "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence," which is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009) (internal quotation marks omitted). This standard has been stated more broadly than it has been applied.

### A.

In the seminal case of *Vega v. National Life Insurance Services, Inc.*, we explained that "we will not countenance a denial of a claim solely because an administrator suspects something may be awry." 188 F.3d 287, 302 (5th Cir. 1999), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Although we owe deference to an administrator's *reasoned* decision, "we owe no deference to the administrator's unsupported suspicions. Without some concrete evidence in the administrative record that supports the denial of the claim, we must find the administrator abused its discretion." *Id.* Applying this standard in *Vega*, we held that an "ambiguous" notation in the

---

[3] Though a claimant has "the initial burden of demonstrating entitlement to benefits under an ERISA plan," *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993), our review is "limited to considering whether the record supports the reasons" that Johnson & Johnson provided to Napoli in the claims process, *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 353 (5th Cir. 2015). Here, the stated reason for denying severance benefits was termination for a Group I violation. Accordingly, we consider only whether there was substantial evidence to support this conclusion. *See id.* at 353.

plaintiff's medical records was not sufficient evidence that the plaintiff made a material misrepresentation on her enrollment form.  *Id.* at 301.  Because the record contained only "innuendos and hints that Mrs. Vega may have made a material misrepresentation on her enrollment form," and it did not contain any concrete evidence of a misrepresentation, we reversed the administrator's decision.  *Id.* at 302; *cf. Truitt,* 729 F.3d at 513–14 (holding that record contained "concrete evidence" supporting denial of plaintiff's ERISA disability claim, including e-mails showing "that [plaintiff's] travel schedule was rigorous" and surveillance video showing plaintiff "walking, driving, and bending down, and lifting and carrying boxes, bags, coolers, pumpkins, and a dog").

In the present case, the only documents before the committee at the time of its initial review were Johnson & Johnson's Performance and Conduct Standards Policy and the September 2010 letter from Johnson & Johnson's general counsel to Napoli.  The Performance and Conduct Standards Policy is not specific to Napoli or to his alleged violation of company policy; rather, it merely is the policy itself.  Needless to say, a citation to a policy is not evidence that Johnson & Johnson fired Napoli for violating that policy.

The September 2010 letter asserts that Napoli is ineligible for severance benefits because he "was terminated for a Group I violation."  The letter then states: "Furthermore, since [Napoli] wrongfully expensed over $3,000 on his American Express account, the company hereby demands repayment."[4] Although this letter proves that Johnson & Johnson *claimed*—after the fact and in the midst of a dispute over benefits—that it had fired Napoli for a Group I violation, the letter is not substantial evidence that Johnson & Johnson

---

[4] The letter does not state whether the allegedly improper expenditures constituted the Group I violation, and it does not state that Napoli was fired because of the improper expenditures.

## No. 14-31000

*actually did* fire Napoli for a Group I violation.  The letter does not reference, and the record does not contain, any personnel records or contemporaneous employment documents showing that Napoli *actually was* fired for a Group I violation or for making improper expenditures.[5]  We are aware of no case, and Johnson & Johnson does not provide one, holding that a single, cursory, post-termination letter—one that fails to detail the alleged violation or cite to contemporaneous accounts of the violation—constitutes *substantial* evidence.[6]

Johnson & Johnson also points to the March 2012 letter, the May 2012 letter, and the August 2012 letter.  These documents were generated during the ERISA claims process and, therefore, the plan administrator could not have used them to support the initial denial of the claim for severance benefits.  In any event, these documents just re-state the conclusion that Napoli is ineligible for benefits because he was discharged for violating company policy; they do not constitute evidence that Napoli actually was discharged for violating company policy.  As a result, the conclusory statements in the documents do not constitute "concrete evidence . . . that supports the denial of the claim." *Vega*, 188 F.3d at 302.

---

[5] To be clear, Johnson & Johnson was not required to prove that Napoli actually did violate company policy.  Its burden was to provide substantial evidence that it fired Napoli for violating company policy; a single, cursory, post-termination letter does not satisfy that burden.   If the rule were otherwise, companies could just generate post-termination documents asserting that an employee was ineligible for benefits because he had been fired for an unspecified violation, without any obligation to produce evidence that the employee actually was fired for that violation.

[6]  In fact, other courts that have affirmed denials of severance benefits have relied on records more informative about the employment decision than that relied on by the administrator here.  *See, e.g.*, *Anderson v. U.S. Bancorp*, 484 F.3d 1027, 1035 (8th Cir. 2007) (relying on evidence of extensive internal investigation); *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 64 (1st Cir. 2005) (affirming denial of benefits where there was contemporaneous evidence that the terminated employee "forwarded internal e-mails containing . . . confidential and/or proprietary information to a direct competitor"); *Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 776 (8th Cir. 2004) (finding evidence that claimant used company phone for personal calls and improperly used a confidential mailing list for solicitation).

No. 14-31000

Simply put, a single, cursory, post-termination letter asserting that an employee is ineligible for benefits because he had been fired for violating a company policy does not constitute "substantial evidence" that the employee actually had been fired for violating a company policy. If it did, we would read the word "substantial" out of the standard. Although an employee may not use an ERISA claim to litigate the propriety of his termination, the substantial evidence standard does require the administrator to rely on more than conclusory statements and cursory references to determine that a "termination, however unfair or unwise, was for violating company policy." *Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 777 (8th Cir. 2004). The record here, in contrast with our previous decisions, lacks factual development beyond mere conclusions or assertions. *Cf. Truitt*, 729 F.3d at 513–14 (containing a detailed factual record). Thus, as in *Vega*, the record does not contain substantial evidence that Napoli was fired for violating company policy. Accordingly, "we must find the administrator abused its discretion." *Vega*, 188 F.3d at 302.

### B.

Alternatively, the plan administrator's decision did not provide Napoli with a "full and fair review." The lack of a "'full and fair review' . . . is an independent basis to overturn a plan administrator's denial of benefits." *Truitt*, 729 F.3d at 510 n.6. "A plan administrator fails to provide a 'full and fair review' if it does not comply with the 'procedures set forth in [29 U.S.C.] § 1133 of ERISA and in the Department of Labor regulations promulgated pursuant to that section.' These procedures require, among other things, that a plan administrator provide a claimant with 'specific reasons' for terminating benefits . . . ." *Id.* at 509 n.4 (alteration in original) (internal citation omitted). Here, the company never provided Napoli with "specific reasons" for terminating his benefits. Despite the fact that Napoli sent multiple requests

for information as to why he had been terminated, all of the documents he received simply restated company policies and conclusions.  Just as company policies and conclusions are not "concrete evidence," they are not "specific reasons" for terminating benefits.  Therefore, the administrator did not provide Napoli with a "full and fair review," creating "an independent basis to overturn a plan administrator's denial of benefits."  *Id.* at 510 n.6.

### III.

"If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the part of the administrator, award the amount due on the claim . . . ."  *Vega*, 188 F.3d at 302.[7]  Because we find an abuse of discretion here, "we will remand to the district court for a determination of damages . . . and for entry of judgment."  *Id.*[8]

REVERSED and REMANDED.

---

[7] Though *Vega* left open the possibility that remand to the administrator may be appropriate in "some special circumstances," *Vega* also makes clear that early development of the administrative record is preferred. 188 F.3d at 302 n.13.  Accordingly, this court has previously declined remand to the administrator where no substantial evidence "supported the administrator's basis for denying benefits." *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 397 n.5 (5th Cir. 2006).

[8] We express no opinion on an award of attorney's fees and leave the issue for determination by the district court.  *See* 29 U.S.C. § 1132(g)(1) ("[T]he court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").

No. 14-31000

KING, Circuit Judge, dissenting:

The majority arrives at its result only through a disturbing misapplication of the "substantial evidence" test. Because the Plan Administrator's decision to deny Napoli benefits is supported by concrete, direct, and unrebutted evidence, and because Napoli was provided a "full and fair review" of his case, I dissent.

As an initial matter, Napoli's suggestion that there must have been substantial evidence *that he violated a company policy* misstates the relevant inquiry. At oral argument, it became clear that Napoli is attempting to use his ERISA case as a vehicle for relitigating the propriety of his termination. But the Plan makes clear that an employee is not eligible for benefits if he "is terminated as a result of . . . discharge for . . . a violation of applicable rules, policies, and/or practices." Accordingly, the Plan Administrator's decision need only have been based on substantial evidence that Napoli was *discharged for* a violation of company policy, not substantial evidence that Napoli actually committed such a violation.

With that framework in mind, and based on my review of the record, I would conclude that there is at least "some concrete evidence in the administrative record that supports the denial of the claim." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 302 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). The majority pays lip service to this standard, but proceeds to misapply it. A letter[1] from Johnson & Johnson's Office of General Counsel, sent to Napoli's attorney on

---

[1] The letter reads: "This is in reference to the termination of employment of Mr. Napoli. In a conversation last Friday with my client, you were told that Mr. Napoli was entitled to 4 weeks' severance. That is incorrect. Since he was terminated for a Group 1 violation, he is not entitled to any severance. Furthermore, since he wrongfully expensed over $3,000 on his American Express account, the company hereby demands repayment. He can send this reimbursement directly to Ms. Harris."

September 27, 2010, just days after Napoli's termination, makes clear that he was terminated due to a violation of company policy—specifically, "a Group 1 violation," based on allegations that "he wrongfully expensed over $3,000 on his American Express account."[2]    This letter constitutes *concrete* evidence—indeed, *direct* evidence—as to why Johnson & Johnson chose to terminate Napoli.[3]  This direct evidence constitutes at least "more than a scintilla" and "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 307 (5th Cir. 2015) (internal quotation marks omitted) (defining "substantial evidence").

Furthermore, this evidence went unrebutted.  Napoli failed to submit any evidence suggesting that he was terminated for any reason other than a violation of company policy, despite the fact that he carried "the initial burden of demonstrating entitlement to benefits under an ERISA plan." *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993).  Although Napoli claimed in a letter to Johnson & Johnson that he was discharged "due to the elimination of [his] position or a reduction in work-force," he offered no evidence in support of that assertion. *See Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 250 (5th Cir. 2009) ("[The claimant] did not supplement the record with other evidence in this case, nor can he point to evidence that the Plan Administrator failed to consider."); *cf. Vega*, 188 F.3d at 300 ("Before filing suit, the claimant's lawyer can add additional evidence to the administrative

---

[2] Johnson & Johnson's policies, which were provided to Napoli, state that Group 1 violations include "[w]illfully making any false statement in records that are the property of the Company or which are submitted to the Company including . . . expense reports."

[3] Moreover, as the majority notes, in various correspondence with Napoli's attorney in 2012, Johnson & Johnson reiterated that Napoli was terminated "due to the violation of the Company's Performance and Conduct Standards Policy."

No. 14-31000

record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.").

I admit that the evidence here, while concrete, is on the "low end" of the substantial evidence spectrum under our caselaw. However, "our review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—*even if on the low end.*" *Vega*, 188 F.3d at 297 (emphasis added). Because the inquiry the Plan Administrator faced in this case was a simple one—requiring only a determination of why Johnson & Johnson terminated Napoli—it is not surprising that the evidence in the record is less than voluminous. I would also note that where, as here, the Plan grants the Plan Administrator discretion to determine benefit eligibility, our review is highly deferential. *See Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 541 (5th Cir. 2007) ("We should not substitute our judgment for that of the administrator."), *overruled on other grounds by Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242 (2010); *Holland*, 576 F.3d at 246 ("A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." (internal quotation marks omitted)). The Plan Administrator's decision here was based not on "unsupported suspicions," *Vega*, 188 F.3d at 302, but rather on concrete and unrebutted evidence of the reason for Napoli's termination. Accordingly, I would conclude that the low substantial evidence bar has been met.

The majority's alternative conclusion that the plan administrator denied Napoli a "full and fair review" fares no better. Although ERISA beneficiaries are entitled to "adequate notice in writing . . . setting forth the specific reasons for . . . denial[s]," 29 U.S.C. § 1133(1), "[c]hallenges to ERISA procedures are evaluated under the substantial compliance standard," *Wade*, 493 F.3d at 539.

11

"This means that the technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled"—i.e., so long as a beneficiary is afforded "an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Id.* (internal quotation marks omitted). That standard has been met here, as the Plan Administrator's denial letter made clear that the denial rested on the conclusion that Napoli was discharged for violating company policy. Moreover, the September 2010 letter placed Napoli on notice that the policy violation stemmed from allegations of improper credit card charges.[4] *See id.* ("The substantial compliance test also considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." (internal quotation marks omitted)).

In my view, the majority has, in effect, applied a standard more rigorous than the substantial evidence test as described in our precedents. The direct and undisputed evidence in this case is sufficient to meet this low bar. Johnson & Johnson fired Napoli because he "wrongfully expensed over $3,000 on his American Express account." Because of the majority's decision to reverse the district court's judgment, Johnson & Johnson is now stuck with paying severance benefits to Napoli. I dissent.

---

[4] There is no suggestion by Napoli, nor does the record indicate, that there was any other alleged company policy violation at issue. Thus, the Plan Administrator's failure, in its denial letter, to explicitly describe the nature of the allegations did not have the effect of denying Napoli a full and fair review. The September 2010 letter made clear to Napoli that his termination stemmed from allegations of credit card misuse.